IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD L. ANDERSON, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> OLIVIA CRAVEN, Director of Idaho ) <br> Pardon and Parole, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. CV07-246-BLW <br><br> **MEMORANDUM DECISION** <br> **AND ORDER** |

Pending before the Court is Defendant Olivia Craven's Motion for Summary Judgment (Docket No. 16.) Having reviewed the parties' filings, as well as the record in this case, the Court has determined that oral argument is unnecessary. The Court concludes, as more fully explained below, that Defendant's Motion for Summary judgment should be granted in part and denied in part.

## MOTION FOR SUMMARY JUDGMENT

### A. Factual Background

Plaintiff is an Idaho Department of Correction (IDOC) inmate who was seeking release on parole in August 2005. The defendant in this case is Olivia Craven, Executive Director of the Idaho Commission of Pardons and Parole. This case concerns whether Defendant violated Plaintiff's First and Fourteenth Amendment rights in requiring him to

MEMORANDUM DECISION AND ORDER 1

attend the Therapeutic Community Program ("TC"), which included Alcoholics Anonymous ("AA"), a religion-based program, prior to considering his eligibility for parole.  (Docket No. 16, Attach. 3, Ex. A.)  On September 24, 2005, Plaintiff filed a Self-Initiated Progress Report ("SIPR"), which is like a motion for reconsideration of parole, stating "Due to my age I was unable to endorse the TC program.  The program contradicts three core beliefs that I was raised by.  One, I cannot share anything with others, two, I have to waste food instead of letting someone else eat it, three, to be my brother's keeper." (Docket No. 16, Attach. 3, Ex. B.)  Thereafter, Plaintiff's SIPR was denied by the Commission of Pardons and Parole.  The Commission's minutes stated that "[Plaintiff] did not even want to enter the Therapeutic Community" and once Plaintiff entered the TC Program he asked "to be removed."  (Docket No. 16, Attach. 3, Ex. C.)  The minutes further reflected that Plaintiff "didn't trust the staff, did not like their decision making process, and didn't like to confront others."

On January 23, 2006, Plaintiff filed a second SIPR, alleging for the first time that the Therapeutic Community Program violated his civil rights.  (Docket No. 16, Attach. 3, Ex. D.)  This SIPR was *not* considered by the Commission since the Commission's policy only allows one SIPR to be filed in any 12-month period and Plaintiff had previously filed a SIPR in September of 2005.  Plaintiff again filed a SIPR on May 10, 2006, this time without any mention of the TC Program being violative of Plaintiff's civil rights.  (Docket No. 16, Attach. 3, Ex. E.)  The Commission did *not* consider this SIPR for the same reason it did not consider the January 23, 2006 SIPR - the policy regarding SIPRs

MEMORANDUM DECISION AND ORDER 2

only allows for one filing within a 12-month period.

On November 16, 2006, Plaintiff filed a fourth SIPR alleging in it that attendance of the AA religious-based component of the TC Program violates his civil rights. The Commission denied Plaintiff's SIPR and stated that the AA component had been changed to exclude any religious component.  (Docket No. 16, Attach. 3, Ex. F.)

In a letter sent to Plaintiff on January 25, 2007, Program Coordinator Kevin Butler stated that the TC Program was modified in January of 2006 to "offer an alternative secular solution to the faith-based Alcoholics Anonymous component." (Docket No. 16, Attach. 3, Ex. G.)  On November 24, 2007, Plaintiff filed a SIPR stating "I removed myself from the TC due to the religious overtones of the program." (Docket No. 16, Attach. 3, Ex. H.)

Plaintiff filed a Complaint (Docket No. 3) against Defendant Olivia Craven on June 5, 2007.  Thereafter, Plaintiff filed an Amended Complaint (Docket No. 5) on August 6, 2007.  Plaintiff seeks monetary relief, a "declaratory supplement," which the Court construes as a request for a declaratory judgment, and certification of this matter as a class action.[1]  On August 28, 2008, Defendant Craven filed this Motion for Summary Judgment arguing that Plaintiff is not entitled to monetary relief because monetary claims based upon actions in her official capacity are barred by the Eleventh Amendment and

---

[1] While several cases have been filed in the federal court alleging similar claims regarding the requirement that inmates must complete a religious-based program prior to being considered for parole, they are not numerous or complicated.  In addition, most cases have been resolved and are closed, and this case is near its end.  Thus, the Court declines to certify a class action.

MEMORANDUM DECISION AND ORDER 3

that Plaintiff is not entitled to declaratory relief because Plaintiff's religious objections were not known until after the AA component had been changed to remove any religious component.  (Docket No. 16, p. 6.)

**B.     Standards of Law**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact."  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)).  If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party.  To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

MEMORANDUM DECISION AND ORDER 4

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The law has been clear for many years that an inmate may not be forced to participate in a religiously-oriented prison program. *See Warner v. Orange County Dep't of Prob.*, 115 F.3d 1068, 1074 (2d Cir. 1996); *Kerr v. Farrey*, 95 F.3d 472, 474 (7th Cir. 1996); *cf. Lee v. Weisman*, 505 U.S. 577, 587 (1992). AA has been found to be a religious based program.[2]

---

[2] The Ninth Circuit recently determined that, as early as 2001, the law was clearly established that coerced participation in AA/NA was unconstitutional based on the Establishment Clause. See *Inouye v. Kemna*, 504 F.3d 705 (9th Cir. 2007). In *Turner v. Hickman*, 342 F.Supp. 2d 887 (D.Cal. 2004), the court comprehensively analyzed whether the NA program, based upon the AA program, had religious content. That court reasoned:

MEMORANDUM DECISION AND ORDER 5

### C.     Discussion

#### 1.     Defendant Craven's Immunity with Respect to Claims for Monetary Relief

Defendant Craven argues that as executive director of the Commission, she is entitled to absolute immunity for her actions in requiring Plaintiff to complete the

---

      As disclosed by the record, the NA program plaintiff was required to attend is fundamentally religious, based as it is on the concept of a higher power to which participants must submit. *See Black's Law Dictionary* (8th ed. 2004) (defining "religion" as a "system of faith and worship usu. involving belief in a supreme being and usu. containing a moral or ethical code; esp., such a system recognized and practiced by a particular church, sect, or denomination. . . ."). The suggestion that plaintiff could meet the parole board's requirement of successful completion of NA by "learn[ing] those 12 steps, work[ing] those 12 steps," by expressing a belief in "God" while reflecting on something completely at odds with all traditional notions of "God," simply is not creditable under the circumstances of this case. *See Kerr*, 95 F.3d at 480 (rejecting notion that "concept of God could include the non-religious idea of willpower within the individual," where case was not one in which religious references were merely "incidental"); *Warner*, 115 F.3d at 1076 (rejecting non-sectarian argument made by defendants because, inter alia, "the claim that non-sectarian religious exercise falls outside the First Amendment's scrutiny has been repeatedly rejected by the Supreme Court"). *See also Warburton*, 2 F.Supp.2d at 318 ("The emphasis placed on 'God,' spirituality and faith in a 'higher power' by twelve-step programs such as A.A. or N.A. clearly supports a determination that the underlying basis of these programs is religious . . ."); *Cox v. Miller*, 296 F.3d 89, 94, 108-09 n. 11 (2d Cir.2002), *cert. denied*, 537 U.S. 1192, 123 S.Ct. 1273, 154 L.Ed.2d 1026 (2003) (in reviewing claim of cleric-congregant privilege in habeas case, summarizing history of AA and concluding that AA's activities "must be treated as religious for purposes of [ ] Establishment Clause analysis"); *but see Stafford v. Harrison*, 766 F.Supp. 1014, 1016-17 (D.Kan.1991) (pre-*Warner* and -*Kerr* decision commenting that "[w]hile the spiritual nature of [AA] cannot be denied, the court is not persuaded this program may properly be characterized as a religion. The central text of the program ... refutes such a suggestion.... Further, the belief in a Supreme Being 'cannot be sustained as a distinguishing characteristic of religion.'" (citations omitted)).
      Based on the above, the undersigned recommends that this court join the Second and Seventh Circuits in their determination that requiring participation in NA is an establishment of religion prohibited by the First Amendment.
*Id.* at 896-97.

religious-based program as part of parole eligibility as alleged in the Complaint. The Court agrees.

The United States Supreme Court has determined "that some officials perform 'special functions' which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993).  The Supreme Court has determined that common law immunity considerations "support[] a rule of absolute immunity for conduct of prosecutors that was 'intimately associated with the judicial phase of the criminal process.'" *Id*. at 270 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).

A court analyzing immunity issues must always look to the function being performed – whether it has a "functional tie to the judicial process," or whether it is merely investigatory. *Genzler v. Longanbach*, 410 F.3d 630, 637 (9th Cir. 2005) (citing *Buckley*).  In *Swift v. State of California*, 384 F.3d 1184 (9th Cir. 2004), the Ninth Circuit Court of Appeals held that absolute immunity extends to members of state parole boards for the actual decision to grant, deny, or revoke parole and for actions "integral to those decisions." *Id*. at 1191; *accord  Brown v. California Dept. of Corrections*, 554 F.3d 747, 751 (9th Cir. 2009).  "Because parole conditions are an integral part of the decision to grant parole, their imposition is a quasi-judicial function and entitle Defendants to absolute immunity." *Cordell v. Tilton*, 515 F.Supp. 2d 1114, 1120 (D. Cal. 2007); *accord Swift*, 384 F.3d at 1188.  Defendants who "seek absolute exemption from personal

MEMORANDUM DECISION AND ORDER 7

liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope." *Butz v. Economou*, 438 U.S. 478, 506 (1978).

Based on the function test, it is clear that Defendant Craven, executive director of the Idaho Commission of Pardons and Parole, is entitled to absolute immunity for her exercise of discretion in imposing parole conditions, such as completion of the Therapeutic Community Program involving AA. Absolute immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir. 1986) (internal citations omitted). When absolute immunity applies, it means that a state actor is not liable for monetary damages. *Stump v. Sparkman*, 435 U.S. 349 (1978).

Based upon all of the foregoing, Defendant Craven is entitled to absolute immunity, and thus, the Court will grant Defendant's Motion for Summary Judgment with respect to Plaintiff's monetary relief claim.

### 2. Defendant Craven's Liability for Declaratory Relief

Although Plaintiff is not seeking outright release on parole and is seeking declaratory relief, the Court will construe relief broadly to include a request for injunctive relief to prevent the Defendant from using Plaintiff's refusal to attend a religious-based rehabilitative program as a factor in Plaintiff's parole consideration. *See Armstrong v. Beauclair*, 2007 WL 1381790, at *3 (D. Idaho). Where prospective injunctive relief is available, declaratory relief remains available. *See Green v. Mansour*, 474 U.S. 64, 71-74 (1982) (Eleventh Amendment bars the federal courts from issuing declaratory judgments where the state is no longer violating federal

law). Defendant Craven is the executive director of the Idaho Commission of Pardons and Parole and would be responsible for enforcing injunctive relief, such as a new parole hearing.[3] Therefore, if Plaintiff shows that his rights have been violated under the First or Fourteenth Amendment, he would be entitled to declaratory and injunctive relief.

### 3. First Amendment Religion Claim

Although several different tests exist to address First Amendment violation allegations, this Court agrees that the "coercion test" is most appropriate in situations involving forced participation in allegedly religion-based prison rehabilitation programs. *See Armstrong*, at *5. A violation is found "if a prisoner official, a parole board, or another state actor requires an inmate to attend a program that emphasizes religion or faith as a condition of his probation or sentencing." *Id.* (citing *Catala v. Commissioner, New Hampshire Dep't of Corr.*, 2005 WL 3133036, at *1 (D.N.H. 2005). "In contrast,

. . . when secular operations are equally available, [there] is not a First Amendment violation."

---

[3] The Idaho Court of Appeals has characterized her statutory powers as follows:

> The executive director is described as the spokesperson for the Commission; however, the director is not a member of the Commission. Rather, the director serves as a full-time employee for the Commission. The director's duties include handling the daily administration of the Commission, acting as an advisor to the Commission, and acting as a liaison between the public and the Commission. A review of the pertinent statutes reveals that there is no prohibition against delegation of such authority to the director. As explained, the approval of recommended parole conditions is, pragmatically, part of the daily administration of the Commission. We agree that the Commission may lawfully delegate specific authority to the director to act in its behalf in approving the Board's recommended parole conditions.

*Mellinger v. Idaho Dept. of Corr.*, 757 P.2d 1213, 1219 (Idaho Ct. App. 1988).

MEMORANDUM DECISION AND ORDER 9

*Id*.

In this instance, the Court does not have enough factual information to determine: (1) to what extent the TC Program was modified to remove any religious component; (2) whether there was an alternative secular program Plaintiff could attend; and (3) the earliest date Plaintiff was given notice of that program.  For example, in response to Plaintiff's November 16, 2006 SIPR, Plaintiff was notified that AA was modified to exclude any religious component, but without more specific information as to the modified AA program, the Court is not convinced that it rises to the "secular operation" required by the "coercion test."  *See* Footnote 1, *supra*.

Furthermore, the statement in Kevin Butler's letter to Plaintiff stating that the TC Program was modified in January of 2006 to "offer an alternative secular solution to the faith-based Alcoholics Anonymous component" is unsubstantiated.  There is no information as to what this "secular solution" is and whether Plaintiff had the opportunity to enter that particular program in lieu of AA.

In addition, the Court rejects Defendant's argument of entitlement to summary judgment on the basis that because Plaintiff did not initially object to AA or that he first objected to the TC program on other grounds, such as age and personal secular values, his later objection on religious grounds is "not credible."  Rather, such a credibility issue would be a jury determination.

### 4.     **Fourteenth Amendment Equal Protection Claim**

Plaintiff alleges that Defendant Craven violated his right to equal protection by "favoring inmates who participate in the program as opposed to the differential treatment being afforded Plaintiff."  (Docket No. 5, Amended Complaint, p. 3.)  Defendant has not specifically addressed

the merits of this claim. She may do so if she files a second motion for summary judgment.

**D.     Conclusion**

Because there is a genuine issue of material fact as to whether Defendant Craven provided Plaintiff the opportunity to complete a truly secular program as part of his therapeutic program and whether Plaintiff's opposition to the program will be used as a factor in future parole hearings, Defendant's Motion for Summary Judgment with respect to declaratory and injunctive relief is denied without prejudice. Plaintiff and Defendant may have an additional sixty (60) days in which to exchange documents or discovery requests to obtain the factual information necessary to address the remaining issues in this case. After that, the parties shall have thirty (30) days in which to submit a motion for summary judgment if they have factual information to support such a request.

The parties are also encouraged to consider whether they wish to pursue settlement of this case, such as agreeing which facts or factors the Parole Commission may not consider in Plaintiff's future parole hearings and which programs he will be required to attend, if any, and/or a "nuisance value" of a small monetary sum or commissary item(s) without an admission of liability, in lieu of further litigation. The parties may pursue private negotiations between themselves or may file a joint request for a settlement conference with a United States Magistrate Judge. A joint settlement conference request may include a request to vacate the foregoing deadlines.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that:

A.     Defendant Craven's Motion for Summary Judgment (Docket No. 16) is

GRANTED as to Plaintiff's claims for monetary relief, and DENIED as to Plaintiff's claims for declaratory and injunctive relief.

B. The parties may engage in discovery only on the limited subject matter described herein above for a time period of sixty (60) days after entry of this Order.

C. The parties shall submit any summary judgment motions within ninety (90) days after entry of this Order.

DATED: **March 26, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge