UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD L. ANDERSON,<br><br>                Plaintiff,<br><br>    v.<br><br>OLIVIA CRAVEN, Director of Idaho Pardon and Parole,<br><br>                Defendant. | Case No. CV07-246-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendant Olivia Craven's Renewed Motion for Summary Judgment. (Dkt. 27.) Having reviewed the parties' filings, as well as the record in this case, the Court has determined that oral argument is unnecessary. Accordingly, the Court enters the following Order granting the Renewed Motion for Summary Judgment.

## BACKGROUND

Plaintiff Gerald L. Anderson (Plaintiff) is an Idaho Department of Correction (IDOC) inmate who sought release on parole in 2005, and continues to seek parole today. The defendant in this case is Olivia Craven, Executive Director of the Idaho Commission of Pardons and Parole (Defendant). Plaintiff is serving a sentence for aggravated DUI and has two prior DUIs on his record. As a result, the Idaho Commission of Pardons and

Parole recommended that Plaintiff participate in a Therapeutic Community (TC) program for rehabilitative purposes prior to parole.

This case concerns whether Defendant violated Plaintiff's First and Fourteenth[1] Amendment rights in requiring him to attend the Therapeutic Community Program ("TC"), which included Alcoholics Anonymous ("AA"), a religion-based program, prior to considering his eligibility for parole. (Dkt. 16, Attach. 3, Ex. A.)

The Court earlier determined that Plaintiff is not entitled to monetary relief. (Order of March 26, 2009, Dkt. 20.) The Court left open the issues of whether Plaintiff was entitled to declaratory or injunctive relief, because it appeared that there was a genuine issue of material fact as to whether Defendant Craven, in her official capacity, has provided Plaintiff the opportunity to complete a truly secular program as part of his therapeutic program and whether Plaintiff's opposition to the program will be used as a factor in future parole hearings. Defendant was invited to file a second supplemental motion for summary judgment if facts existed to support her position that Plaintiff's remaining claims are moot.

Defendant filed a second motion for summary judgment, but, in response, Plaintiff brought up an additional issue–not simply whether the now-optional AA/NA portion of

---

[1] The Supreme Court has instructed the federal courts that, whenever possible, they should analyze constitutional claims using an "explicit textual source of constitutional protection," such as the Fourth Amendment, rather than using "the more generalized notion of 'substantive due process'" under the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Under the *Graham* principle, Plaintiff's claim is more appropriately construed as an First Amendment claim than a Fourteenth Amendment substantive due process claim.

**MEMORANDUM DECISION AND ORDER - 2**

the TC Program was religious in nature, but whether the entire TC Program is religious in nature and has "religious overtones" such that it violates the First Amendment. Rather than not permitting Plaintiff to enlarge his claims in that manner, the Court permitted Defendant to file a third motion for summary judgment to address Plaintiff's expanded claim.

## DEFENDANT'S THIRD MOTION FOR SUMMARY JUDGMENT

### 1. Applicable Standards of Law

A party is not entitled to a declaratory judgment that his constitutional rights were violated when the violation has ceased and there is no evidence that the conduct toward him will be repeated. *Green v. Branson,* 108 F.3d 1296, 1299-1300 (10th Cir. 1997). Rather, suits for declaratory or injunctive relief must present a live controversy justiciable under Article III of the Constitution. *See MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 126-27 (2007) (declaratory judgment); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (injunctive relief). An actual, justiciable controversy must exist not only at the moment that the suit is initiated, but also at the time that the party's entitlement to the requested relief is decided. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969). Past injury, without more, cannot form the basis for either injunctive or declaratory relief. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."); *Haase v. Sessions*, 835 F.2d 902, 911 (D.C.Cir. 1987) (equating case-or-controversy requirement for declaratory judgment with one

**MEMORANDUM DECISION AND ORDER - 3**

applicable to request for injunctive relief); *see also Green v. Mansour*, 474 U.S. 64, 74 (1985) (rejecting the view that "declaratory judgments expressly adjudicating the question of past violations are routinely available").

Generally, the Establishment Clause of the First Amendment is invoked by litigants asserting that the government is sponsoring religion, while the Free Exercise Clause is implicated where the government is allegedly attempting to discourage a religion or practice. However, the line between these two Clauses is often blurred.[2] In *Everson v. Board of Education of Ewing Township*, 330 U.S. 1 (1947), the United States Supreme Court defined the reach of the First Amendment Establishment Clause as follows:

> The 'establishment of religion' clause of the First Amendment means at least this: Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another. Neither can force nor influence a person to go to or to remain away from church against his will or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance.

*Id*. at 15-16. A program violates the Establishment Clause if its primary effect is to advance or inhibit religion. *Gray v. Johnson*, 436 F.Supp. 2d 795 (W.D. Va. 2006) (citing *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*,

---

[2] *See* Ronald J. Krotoszynski, Jr., *If Judges Were Angels: Religious Equality, Free Exercise, and the (Underappreciated) Merits of Smith*, 102 NW. U. L. Rev. 1189 (2008); Carolyn A. Deverich, *Establishment Clause Jurisprudence and the Free Exercise Dilemma: A Structural Unitary-Accommodationist Argument for the Constitutionality of God in the Public Square*, 2006 BYU L. Rev. 211 ("courts have also disagreed whether the Establishment and Free Exercise Clauses are interrelated or mutually exclusive, at times treating the Religion Clauses as different sides of the same coin ("unification")).

**MEMORANDUM DECISION AND ORDER - 4**

483 U.S. 327, 337 (1987)).

In *Gray v. Johnson*, the federal district court noted that a prison TC program must be able to:

> strike the necessary constitutional balance between the inmates' right to speak and their right to be free from state-sponsored religious indoctrination. It is no more permissible to force participants to check their religion at the door than it is for the government to abandon its neutral role in the conflict between religion and non-religion.

436 F.Supp 2d at 802.

While there are several different First Amendment Free Exercise Clause tests developed by the United States Supreme Court to address various factual circumstances where religion is at issue, the Ninth Circuit has agreed with those courts that have applied the "coercion test" as stated in 95 F.3d 472, 474 (7th Cir. 1996): "first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious rather than secular?" *See Inouye v. Kemna*, 504 F.3d 705, 713 (9th Cir. 2007) (relying on *Kerr*, 95 F.3d at 479).

In *Catala v. Commissioner, New Hamshire Department of Correction*, the court explained the "coercion test" as follows:

> Forced attendance or coercion is shown if a prison official, a parole board, or another state actor requires an inmate to attend a program that emphasizes religion or faith as a condition of his probation or sentencing. In contrast, merely suggesting or recommending a religious program, without force or coercion or when secular options are equally available, is not a First Amendment violation.

2005 WL 3133036, at *1 (D.N.H. 2005) (citations omitted).

**MEMORANDUM DECISION AND ORDER - 5**

## 2. Discussion of TC Program Content

To support her position that the TC Program does not violate the First Amendment, Defendant Craven has supplied the Affidavit of Scott Brooks, who is the program coordinator for the IDOC. He declares that "the core programs delivered to all TC participants are designed to teach the offenders skills to prevent criminogenic behaviors and/or substance abuse." (Affidavit of Scott Brooks, ¶ 6, Dkt. 27-2.) He also declares that none of the core programs has a religious component at all. (Id.) Participants can select from three support groups, and must attend one of the three: (1) AA/NA; (2) Beat Your Own Addiction; or (3) Smart Recovery. "Beat Your Own Addiction" is a secular program.

Plaintiff argues that the IDOC was forced to remove the religious components of the TC program when the ACLU complained to the IDOC in 2005. Plaintiff agrees that the "Beat Your Own Addiction" Program was added in February 2006, but argues that, nevertheless, religious content remained throughout the entire TC program. As proof that "religious overtones" still exist in the TC program today (September 2010), he provides affidavits and letters from several other inmates.

Construing the factual allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff has alleged personal knowledge that the TC Program continued to have some religious content as late as Fall 2005, when Plaintiff last participated in the program. In Winter 2005, the TC Program was changed due to notification from the ACLU that requiring inmates to complete AA/NA violated the Establishment Clause of

**MEMORANDUM DECISION AND ORDER - 6**

the United States Constitution. Because Plaintiff participated in the TC Program during the era before the prison revised the program to address the First Amendment issues, Plaintiff's own allegations of pre-revision First Amendment violations have merely historical relevance here.

The affidavit of Jake Gress states that Mr. Gress was forced to attend AA or NA every day when he was participating in the TC Program at ISCI. He also states that leaders discouraged inmates from participating in the secular alternative components of the program. The affidavit is dated August 21, 2008, but the dates that Mr. Gress attended the TC Program are unknown. (Dkt. 29, pp. 9-10.)

An unsworn letter from Therhal Kevan Parish states that he completed the TC Program in 2005. He states that religious overtones were evident in every programming day. ( Dkt. 29, p. 11.) An unsworn letter from Alex Barclay states that as late as 2008, a counselor named Ralph integrated religious concepts in the secular Beat Your Own Addictions program, and that the TC program in general had merely shifted from "God" to "higher power." (Dkt. 29, p. 12.) An unsworn letter from Chris Martinez dated August 12, 2008, does not specify when he participated in the program, but it notes that he was required to participate in AA/NA. (Dkt. 29, p. 13.)

Defendant has moved to strike the affidavits and letters as irrelevant and lacking in foundation. The Court will not strike the affidavits and letters because of Plaintiff's status as a pro se inmate with limited resources, but notes that the affidavits and letters have historical significance but little relevance to the TC program used at the prisons in

**MEMORANDUM DECISION AND ORDER - 7**

September 2010. The closest evidence presented by the inmates is from 2008, approximately two years ago. To illustrate the age of the evidence, the Court notes that the statute of limitations for civil rights claims is two years. If such claims were brought now, they would not even be actionable; by analogy, as evidence that today's entire TC Program (excluding the optional AA/NA portion) is impermissibly religious, the inmates' allegations are stale and merely speculative.

The only relevant evidence as to the content of the TC Program in Fall 2010 is found in the Affidavit of Scott Brooks, who has personal knowledge of the program. Plaintiff has produced no contemporaneous evidence to counter the Brooks Affidavit. As a result, Plaintiff has not met his burden to show he has sufficient evidence that he could prevail in demonstrating that "there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Preiser v. Newkirk,* 422 U.S. at 402. Plaintiff has not shown that a genuine issue of material fact exists as to whether the Idaho Commission of Pardons and Parole requires as a prerequisite to parole eligibility the completion of a rehabilitative program, the primary objective of which is religious rather than secular.

Case law requires the TC Program to accommodate the demands of both the Establishment Clause and the Free Exercise/Free Speech Clauses. Program leaders cannot discourage inmates from participating in the secular options or require inmates to participate in the religious options; at the same time, inmates cannot be prohibited from practicing or speaking about their religion while they are in the program, so long as they

**MEMORANDUM DECISION AND ORDER - 8**

are not proselyting on behalf of the State. Brooks' Affidavit shows that the Prison has altered its Program to try to satisfy these demands, and Plaintiff has not produced sufficient evidence to show that any alleged breaches of the new procedures and rules by staff implementing the program are widespread or State--sanctioned in today's program. As a result, Defendant Craven is entitled to summary judgment on this claim.

### 3. Discussion of Whether Plaintiff's Constitutional Objections to the Program Will be Held Against Him if He Re-applies to the Program

In their most recent briefing, neither party addressed the issue of whether Plaintiff's opposition to the TC Program would negatively affect his ability to be selected for and placed in the Program in the future. The IDOC website shows that Petitioner is scheduled to complete his sentence on February 7, 2011. There is no evidence in the record that Plaintiff has re-applied to the TC Program; therefore, the Court finds that Plaintiff has not alleged sufficient facts to demonstrate that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

Case law provides that a party is not entitled to a declaratory judgment that his constitutional rights were violated when the violation ceased and there is no evidence that the conduct toward him will be repeated. *Green v. Branson,* 108 F.3d at 1299-1300. Here, there is no evidence that Plaintiff's past objections have ever been held against him in a re-application to the TC Program. Therefore, the Court has no factual grounds upon which to conclude that such conduct would be *repeated*. As a result, Plaintiff's claim is

subject to summary judgment.

Plaintiff expressed his frustration that, by the time this case is at its end, he will already have completed his sentence, and the prison will be able to continue violating inmates' First Amendment rights. Plaintiff's is one of several similar cases filed in the federal district court. As a result of each of these cases, the IDOC and its attorneys have been required to review and assess the changes in the TC Program since it began its evolution from a program with required religious components to a secular program with an optional religious component. Further, it is not the ruling of this Court that the current TC Program absolutely meets the requirements of the Establishment Clause and Free Exercise/Free Speech Clauses. Rather, Plaintiff simply brought forward no current evidence to contest the current evidence brought forward by Defendant where only declaratory and injunctive relief are at issue.

**ORDER**

IT IS ORDERED that Defendant's Renewed Motion for Summary Judgment (Docket No. 27) is GRANTED, and Plaintiff's Complaint and Amended Complaint are Dismissed. All claims are DISMISSED with prejudice, other than those pertaining to any claim that Plaintiff may have as a result of current application to the TC program, which, to that extent, are DISMISSED without prejudice.

     DATED:  **September 14, 2010**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 11**